Filed 9/14/20  P. v. Quiroz CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|   |   |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072344 |
| v. | (Super.Ct.No. 16CR072259) |
| ARTHUR JOSEPH QUIROZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ronald M. Christianson, Judge.  Affirmed.

Jamie L. Popper, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Teresa Torreblanca, and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

1

In a single trial on charges arising from two separate incidents, a jury found defendant and appellant Arthur Joseph Quiroz guilty of first degree murder (Pen. Code,[1] § 187, count 1), attempted murder (§§ 186, subd. (a), 664, count 2), two counts of unlawful possession of a firearm by a felon (§ 29800, subd. (a)(1), counts 3 & 6), and second degree robbery (§ 211, count 4), and found true firearm enhancements alleged with respect to counts 1, 2, and 4.  The jury acquitted Quiroz on an attempted carjacking charge (§§ 215, subd. (a), 664, count 5) and a gun enhancement associated with that charge.  The trial court found true alleged recidivism-based enhancements, and sentenced Quiroz to a determinate sentence of 45 years, plus an indeterminate sentence of 75 years to life in prison, with a minimum parole eligibility date of 14 years.

Quiroz argues here that the trial court erred by consolidating the charges from the two incidents, initially filed separately, into a single case.  We reject this argument, finding no abuse of discretion in the trial court's consolidation of the two cases, and no violation of Quiroz's right to due process.  Quiroz further contends that he received ineffective assistance of counsel because his trial counsel did not move to suppress pretrial and in court identifications of him by one of the victims.  We decline to consider the merits of this argument, finding it more appropriately considered on a record developed in a habeas corpus proceeding.  We therefore affirm the judgment.

---

[1] Further undesignated statutory references are to the Penal Code.

## I. BACKGROUND

On the evening of April 19, 2016, a woman, K.L., and her fiancé, Dewayne Phillips, drove to a park near the church where they planned to get married, intending to have a drink, smoke some marijuana, and discuss their wedding plans. They had been there, still seated in the car, for about five minutes when a man tapped on a rear window with a gun. The man then approached the driver's side window, where K.L.'s fiancé was sitting, and said "What's up . . . ?" adding a racial epithet. K.L.'s fiancé responded: "What's up?" The man then opened fire into the car, striking K.L.'s fiancé, then running around to the passenger's side and shooting at K.L. K.L.'s fiancé was shot four times and died from his injuries. K.L. was shot once, but survived.

K.L. spoke to police about what had happened, describing the shooter as a Hispanic male, and stating that she believed she could identify him. Police matched a palm print recovered from the car's driver's side rear door to Quiroz. In June 2016, about two months after the shooting, a detective showed K.L. a photo lineup that included Quiroz's picture. K.L. commented that two of the pictures (in positions 2 and 5) resembled the shooter, and she expressed that she wished the photograph of a third, in position 4, showed his head from a different angle. Quiroz's photograph was the one in position 4. K.L. did not identify any of the men as the shooter.

The next morning, K.L. sent the detective a text message that she had a dream about the shooting and wanted to take another look at the photograph in position 4, Quiroz's photo. The detective was busy with an unrelated investigation, however, and

3

did not meet with K.L. again until December 2016. At the December 2016 meeting, the detective showed K.L. another photo lineup. The new lineup had a different picture of Quiroz, from closer in time to the shooting, coincidentally again in position 4. This time, K.L. identified Quiroz as the shooter. K.L. asked to see the photographs from the first lineup again. The detective gave her the photos from the first lineup in a stack with numbers removed, and out of their original order. K.L. again identified Quiroz's photograph as that of the shooter.

At trial, in October 2018, K.L. again identified Quiroz as the shooter, pointing him out from the witness stand.

Meanwhile, on June 13, 2016, a man (R.R.) was in his car making a phone call and preparing to drive away from where he had just won some money gambling. A red Honda drove up behind him, preventing him from leaving. Two men approached, one of whom had a gun. The two men robbed R.R. at gunpoint, taking $200, as well as a phone, an empty wallet, and a necklace. As they were robbing R.R., they also punched him in the face multiple times, breaking his nose and causing abrasions, redness, and swelling. They also told R.R. that they were going to take his car. R.R. was able to get away from them on foot, however, taking his keys with him.

R.R. recognized both men as people he knew by their nicknames; at trial, he identified Quiroz as the person who held a gun on him and who first punched him. Once R.R. was able to reach a safe place and call the police, he reported who had robbed him and described the car they were driving. Shortly thereafter, a few miles from the robbery,

4

patrol officers pulled over a red Honda with three occupants, including Quiroz, the second man R.R. identified (J.G.), and a third person. R.R. was driven to where Quiroz and his companions had been detained, and he identified Quiroz and J.G. as the people who had robbed him, pointing out that Quiroz was wearing his stolen necklace. Over $200, in denominations matching those described by R.R. to police, was found in Quiroz's pocket. A phone and wallet matching R.R.'s description of items taken from him were recovered from the car. Police did not find a firearm.

R.R. failed to appear the first time he was subpoenaed to testify. He also admitted to having a criminal record, including theft and drug offenses.

J.G., a cousin by marriage of Quiroz, testified at trial for the defense. J.G. had pleaded guilty to robbery for the incident with R.R., but he asserted that neither he nor Quiroz in fact took anything from R.R., claiming that the allegedly stolen property found in the car all belonged to himself or R.R. Rather, according to J.G., he approached R.R.'s car alone, and punched him as part of a dispute over R.R.'s attempt to "be with" J.G.'s girlfriend. J.G. testified that Quiroz and the third person drove with him to R.R.'s location, but waited by the car and did not participate in the assault.

Over defense opposition, the charges arising from the two incidents were consolidated into a single trial. In connection with the April 2016 incident, the jury found Quiroz guilty of first degree murder (§ 187, subd. (d), count 1), attempted murder (§§ 186, 664, count 2), and unlawful possession of a firearm by a felon (§ 29800, subd. (a)(1), count 3). The jury also found true a firearm enhancement of count 1, pursuant to

5

section 12022.53, subdivision (d), and a firearm enhancement of count 2, pursuant to section 12022.53, subdivision (c). In connection with the June 2016 incident, the jury found Quiroz guilty of second degree robbery (§ 211, count 4) and a second count of unlawful possession of a firearm by a felon (§ 29800, subd. (a)(1), count 6). It also found true a firearm enhancement of count 4, pursuant to section 12022.53, subdivision (b). It acquitted Quiroz of attempted carjacking (§§ 215, subd. (a), 664, count 5) and a firearm enhancement alleged as to count 5.

The trial court, with the agreement of the prosecution, dismissed gang enhancements alleged as to counts 4 and 6. The court found true that Quiroz had a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and a prior serious felony conviction (§ 667, subd. (a)). The trial court imposed a sentence of 50 years to life for count 1 (25 years to life, doubled by the strike prior), plus 25 years to life for the firearms enhancement of count 1; a consecutive term of life in prison with a minimum parole eligibility date of 14 years (seven years, doubled by the strike prior) for count 2, plus 20 years for the firearms enhancement of count 2; a 10 year term (five years, doubled by the strike prior) for count 4, plus 10 years for the firearms enhancement of count 4; five years for the prior serious felony enhancement; and stayed terms for counts 3 and 6, for a total sentence of a determinate term of 45 years plus an indeterminate term of 75 years to life with a minimum parole eligibility date of 14 years.

6

## II. DISCUSSION

A. *Consolidation*

Quiroz contends that the trial court erred by consolidating the charges arising from the two separate incidents into a single trial. We find no abuse of the trial court's discretion.

In relevant part, section 954 provides "if two or more accusatory pleadings are filed" charging "two or more different offenses of the same class of crimes or offenses . . . the court may order them to be consolidated." (§ 954.) Nevertheless, "'[t]he determination that the offenses are "joinable" under section 954 is only the first stage of analysis because section 954 explicitly gives the trial court discretion to sever offenses or counts "in the interest of justice and for good cause shown."'" (*People v. Lucky* (1988) 45 Cal.3d 259, 276-277 (*Lucky*).) "Joinder is ordinarily *favored* because it avoids the increased expenditure of funds and judicial resources that may result from separate trials." (*People v. Simon* (2016) 1 Cal.5th 98, 122, italics added.)

A motion for joinder is directed to the discretion of the trial court. (*People v. Morgan* (1955) 134 Cal.App.2d 97, 98, fn. 6.) Where the statutory requirements for joinder are met, a defendant must make a clear showing of prejudice to establish an abuse of discretion. (*People v. Mendoza* (2000) 24 Cal.4th 130, 160 (*Mendoza*).) "In determining whether there was an abuse of discretion, we examine the record before the trial court at the time of its ruling. [Citation.] The factors to be considered are these: (1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges

7

are likely to unusually inflame the jury against the defendant; (3) whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case." (*Mendoza*, *supra*, at p. 161.) Those four factors must also be weighed against the benefits to the state from joinder. (*People v. Soper* (2009) 45 Cal.4th 759, 783 (*Soper*).) A trial court's denial of a motion to sever properly joined charged offenses amounts to a prejudicial abuse of discretion only if that ruling falls outside the bounds of reason, based on facts known to the court at the time of the motion. (*Id.* at p. 774; *People v. Geier* (2007) 41 Cal.4th 555, 575.)

Here, the statutory requirements for joinder under section 954 were satisfied because the offenses were "of the same class of crimes." (§ 954.) It is well established that robbery and murder are considered part of the same "class," specifically, "assaultive crimes against the person." (*Lucky*, *supra*, 45 Cal.3d at p. 276.)

"Since the statutory requirements for joinder were met in the present case, appellant can establish error only on a clear showing of prejudice." (*Lucky*, *supra*, 45 Cal.3d at p. 277; see *Mendoza*, *supra*, 24 Cal.4th at p. 160.) Quiroz argues that evidence of the two separate incidents would not have been cross-admissible in separate trials, and the People have not contended otherwise. That factor, therefore, tends to weigh in favor of Quiroz's claim of prejudice, though "the absence of cross-admissibility does not by itself demonstrate prejudice." (*Mendoza,* at p. 161.)

We turn next to the other three factors, which the Supreme Court has summarized as "likelihood to unduly inflame; bolstering of a weak case with a strong one [or a second weak case]; and conversion of charges into a capital offense." (*Soper*, *supra*, 45 Cal.4th at p. 780.) We find that none of these factors support Quiroz.

First, this is not a capital case, so it is undisputed that the third factor does not weigh in favor of a finding of prejudice.

Second, as Quiroz correctly points out, murder is a more serious crime than robbery. It does not follow, however, that the trial court was compelled to find the charges from the April 2016 incident unduly inflammatory. More commonly, the concern regarding inflammatory evidence is that strong evidence of a lesser but more inflammatory crime might be used to bolster a weak prosecution case on another, more serious crime. (*People v. Mason* (1991) 52 Cal.3d 909, 934; see also, e.g., *People v. Chism* (2014) 58 Cal.4th 1266, 1308 [robbery charge properly joined with attempted robbery and capital murder charge in part because details of additional robbery were not inflammatory].) Of course, Quiroz was entitled to a fair trial on all of his charges, and we do not exclude the possibility that, under some circumstances, concerns about prejudice from inflammatory evidence of the more serious crime would support severance from less serious charges. We are not persuaded, however, that this is such a case.

We find the discussion in *People v. Capistrano* (2014) 59 Cal.4th 830 (*Capistrano*) instructive on the issue of "likelihood to unduly inflame," as the Supreme Court put it in *Soper*, *supra*, 45 Cal.4th at p. 780. In *Capistrano*, charges arose from

9

three separate home invasion robberies. (*Capistrano*, *supra*, at p. 849.) During one of the home invasions, a victim, J.S., was raped, in addition to being robbed. (*Id.* at pp. 841-842.) A second incident involved not only robbery, but also the attempted murder of a victim with the last name Martinez. (*Id.* at pp. 844-845.) A third home invasion did not involve rape or murder, but only the robbery of a family with the last name Weir. (*Id.* at pp. 842-843.) The Supreme Court nevertheless disagreed with the defendant's characterization of the "Weir robbery" as relatively "'nonviolent'", finding that it too involved "terrifying circumstances." (*Id.* at p. 850.) On that basis, the Supreme Court rejected the defendant's "claim that evidence of the J.S. and Martinez offenses was so much more inflammatory it would have rendered the jury incapable of fairly assessing the evidence pertaining to the Weir robbery." (*Id.* at p. 851.)

Here, similarly, the charges against Quiroz arose from separate incidents, in which Quiroz was accused of ambushing victims, not in their homes, but rather while they were sitting in their parked cars. One of those incidents resulted in a murder and attempted murder, the other only a robbery. Nevertheless, as alleged, both involved violent, terrifying assaults at gunpoint. The trial court was not compelled to find the evidence of the April 2016 murder so much more inflammatory it would have rendered the jury incapable of fairly assessing the evidence pertaining to the June 2016 robbery.

Finally, we also reject Quiroz's characterization of this as a circumstance where "two weak cases were joined together." Quiroz was identified by an eyewitness as the perpetrator, or at least one of them, in both incidents. There was a basis in the evidence

10

for the defense to argue that there was reason to doubt both of those eyewitness identifications; as discussed, K.L. did not immediately pick Quiroz out of a photographic lineup, while R.R.'s credibility was arguably impeached by his criminal record, and his account of events was disputed by J.G. Both of the eyewitness identifications, however, were corroborated by physical evidence. Quiroz's handprint was found on K.L.'s car door, and he was apprehended wearing a necklace that R.R. identified as his own, while other items that had been stolen from R.R. were also recovered from the red Honda and its occupants. Again, as Quiroz argues, the physical evidence, too, was not necessarily impervious to challenge by the defense. Nevertheless, in our view, neither the case against Quiroz based on the April 2016 incident nor the case based on the June 2016 incident should be characterized as "weak." Indeed, each could reasonably be characterized as strong, even if not overwhelming.

Thus, of the four factors relating to prejudice listed in *Mendoza*, *supra*, 24 Cal.4th 130 only the first, regarding cross-admissibility of evidence, unambiguously weighs in favor of Quiroz. It was reasonable for the trial court to conclude that consolidating Quiroz's cases would not be unduly prejudicial.

Moreover, we must also "proceed to weigh all four factors [regarding prejudice] against the benefits to the state of joinder," which are "very substantial." (*Soper*, *supra*, 45 Cal.4th at pp. 780, 783.) "Foremost among these benefits is the conservation of judicial resources and public funds. A unitary trial requires a single courtroom, judge, and court attaches. Only one group of jurors need serve, and the expenditure of time for

11

jury voir dire and trial is greatly reduced over that required were the cases separately tried. In addition, the public is served by the reduced delay on disposition of criminal charges both in trial and through the appellate process." (*People v. Bean* (1988) 46 Cal.3d 919, 939-940.)

On the record before us, after considering all the relevant factors, we are not persuaded that the trial court exceeded the bounds of reason in concluding that Quiroz had not made a clear showing of prejudice from consolidation of his two cases. Quiroz therefore has not demonstrated that the trial court's ruling amounted to an abuse of discretion.

Quiroz further argues that, even if the trial court's decision regarding consolidation was not an abuse of discretion at the time, later developments during trial show a denial of due process due to "'gross unfairness.'" (*People v. Arias* (1996) 13 Cal.4th 92, 127.) Gross unfairness exists when there is a reasonable probability that the jury's verdict was influenced by joinder. (See *People v. Bean*, *supra*, 46 Cal.3d at p. 940 [finding no gross unfairness because "it is not reasonably probable that the jury was influenced in its verdict of guilt of [one set of] crimes by its knowledge of his involvement in [a second set of] offenses"].) Again, we are not persuaded.

As Quiroz argues in briefing on appeal, there were various inconsistencies between what K.L. and R.R. told police and their testimony at trial, and also within their testimony at trial. Also, at trial, evidence of a history of conflict between R.R. and Quiroz came out; according to R.R., this was not the first time Quiroz attempted to take

his car, and there also seems to have been a dispute over a female, though it is not clear whether this dispute was with Quiroz, J.G., or both.  We disagree with Quiroz, however, that the relative strength of the two cases was changed in any meaningful way by the additional information that came out at trial.  Moreover, it is not apparent why these additional issues should be viewed as increasing the risk that the jury amalgamated the evidence of the two separate incidents.

To the contrary, the record shows that both the prosecution and the defense worked to ensure that the jury would have no difficulty separating the evidence of the two incidents.  All of the prosecution's evidence of the April 2016 murder and attempted murder was presented first, and then it presented evidence of the June 2016 robbery.  In its closing argument, the prosecution emphasized that the jury had been presented evidence of two "separate incidents," and divided its discussion of the charges accordingly.  The defense, too, emphasized that it would be inappropriate for the jury to combine the evidence of the two cases.  In rebuttal, the prosecution took issue with the defense's suggestion that the prosecution was using a weak case to prop up a strong one, stating: "Now, [defense counsel] made it a point to say that I'm pretending to have a good case and, therefore, we have these two incidents filed together in the same trial.  No.  It happened to be two separate incidents that this defendant committed, happens to be one case.  Don't put the blame on me.  Don't make it sound like I'm the one that's pretending to make a bad case a good case.  No.  There are two good cases with two good IDs and with two different types of evidence for each case because they were different

13

investigations." The circumstance that the jury acquitted Quiroz of carjacking, but found him guilty on the other alleged counts, also tends to show the jury treated charges separately, even if, as Quiroz notes, the acquittal would not be necessarily enough, on its own, to show the jury appropriately compartmentalized the evidence.

Quiroz complains that the trial court did not give CALCRIM No. 3515 or other limiting instruction "to help mitigate the risk of spillover."[2] The trial had no sua sponte duty to give such an instruction, however, and Quiroz did not request one. (See *People v. Beagle* (1972) 6 Cal.3d 441, 455, abrogated on another ground in *People v. Diaz* (2015) 60 Cal.4th 1176.)

We find no reasonable probability that the jury's verdict was affected by joinder. Quiroz therefore has not demonstrated any violation of his due process rights.

B. *Ineffective Assistance of Counsel*

Quiroz contends that his trial counsel provided ineffective assistance of counsel by failing to seek to exclude K.L.'s pretrial and in court identifications of him from evidence, arguing that the identifications were tainted by undue suggestion. We decline to reach the merits of this argument here.

---

[2] CALCRIM No. 3515 provides: "Each of the counts charged in this case is a separate crime [. . .] . You must consider each count separately and return a separate verdict for each one."

14

To establish ineffective assistance of counsel, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms.  Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)  On direct appeal, a conviction will be reversed for ineffective assistance "only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.  All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding."  (*Ibid.*)

Our tentative opinion in this matter explained that Quiroz's claim is among those more appropriately resolved in a habeas corpus proceeding.  At oral argument, both Quiroz and the People asked that we decide the matter on appeal.  Predictably, however, both sides contend that the record compels a ruling in their favor.

After reviewing the record again in light of the parties' requests, we continue to believe the matter is best resolved in a habeas corpus proceeding.  The record on appeal is open to competing factual inferences—including, for example, regarding trial counsel's reasoning, and the procedures employed by police in conducting the photographic lineups shown to K.L.—that reasonably could lead to different conclusions on either prong of the

15

*Strickland* inquiry.  Accordingly, we find it would be inappropriate to decide the merits of Quiroz's ineffective assistance of counsel claim here.

III. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____

J.

We concur:

MILLER_____

   Acting P. J.

SLOUGH_____

    J.